UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARINO GUERRERO,

           Petitioner

-vs-

           DECISION AND ORDER

UNITED STATES OF AMERICA,

           01-CR-6058 CJS

           Respondent

FILED JUN - 1 2009 MICHAEL J. ROEMER, CLERK WESTERN DISTRICT OF NY

## APPEARANCES

For Petitioner:    Marino Guerrero, *Pro se*
                          Allenwood Low Security Correctional Institution
                          P.O. Box 1000
                          White Deer, Pennsylvania 17887

For Respondent:   Douglas E. Gregory, Esq.
                          Assistant United States Attorney
                          100 State Street, Room 620
                          Rochester, New York 14614

## INTRODUCTION

Petitioner Marino Guerrero's ("Petitioner") sworn testimony established that he was responsible for distributing approximately two hundred and fifty kilograms of cocaine. Such relevant conduct, together with Petitioner's criminal history, could have resulted in him receiving a sentence of life in prison, although the sentencing guidelines recommended a sentence in the range of twenty-two years to twenty-seven years.[1] However, as a result of his cooperation with law enforcement, Petitioner obtained a substantial break at

---

[1] Plea Transcript (Docket No. [#151-3]) at 16.

1

sentencing, and received a sentence of one hundred eighty months, or fifteen years. Nevertheless, Petitioner now contends that, but for errors by his attorney, he could have received a sentence of one hundred and thirty five months, or eleven years and three months.[2] Now before the Court is the *pro se* petitioner's application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the application is denied.

## 28 U.S.C. § 2255

Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that petitioner is not entitled to relief. 28 U.S.C. § 2255. In other cases, "[a] district court has a wide variety of tools available to it in developing the record during habeas proceedings." *Pham v. United States*, 317 F.3d 178, 180 (2d Cir. 2003). Specifically,

> [i]t is within the district court's discretion to determine whether a hearing is warranted. Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits and written interrogatories. After expanding the record, the district court then decides if an evidentiary hearing also is required. Our precedent disapproves of summary dismissal of petitions where factual issues exist, but it permits a 'middle road' of deciding disputed facts on the basis of written submissions.

---

[2] Petitioner's Memo of Law (Docket No. [#147-3]) at 16.

2

*Id.* at 184 (citations omitted).

## BACKGROUND

The facts of this case were set forth in detail in the Respondent's Response (Docket No. [#151]) and need not be repeated here. For purposes of the instant application, it is sufficient to note only the following facts.

On June 5, 2001, a federal grand jury in the Western District of New York returned a one-count indictment against Petitioner, charging him with conspiracy to possess with intent to distribute, and to distribute, cocaine, in violation of 21 U.S.C. § 846. On July 26, 2001, the Court conducted a detention hearing. At the detention hearing, the Assistant United States Attorney stated, in relevant part: "We believe that ultimately the proof will show that Mr. Guerrero has transported several hundred kilos of cocaine into Rochester for several years."[3] The Assistant U.S. Attorney further stated that the Grand Jury had "heard numerous witnesses' testimony, cooperators who [had] stated they were associated with Mr. Guerrero over the years, who had knowledge of the defendant's involvement in the distribution of cocaine in the State of New York and also the States of Ohio and Texas," and that he expected "several cooperating witnesses from the Houston, Texas, area to be available at the time of trial to provide detailed testimony against the defendant relative to his involvement with what [he termed] as large scale suppliers of cocaine from both Mexico and the Dominican Republic."[4]

On March 12, 2002, a federal grand jury in the Western District of New York

---

[3] Sentencing Transcript [#151-4] at 19.

[4] *Id.*

3

returned a four-count Superseding Indictment against Petitioner and three other individuals, including Petitioner's wife. Count One charged conspiracy to possess with intent to distribute, and to distribute, five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). Count Two charged conspiracy to commit money laundering in violation of 18 U.S.C. § § 1956(h) and 1956(a)(2)(B)(I). Count Three charged the criminal forfeiture of five million dollars pursuant to 21 U.S.C. § § 853(a)(1), (a)(2), and (p). Count four charged the forfeiture of $350,000 pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853(p).

On September 4, 2002, Petitioner and the government entered into a proffer agreement, in which the government agreed, *inter alia*, that it would not use any of Petitioner's statements against him. Subsequently, in October and November 2002, Petitioner testified on behalf of the government in a trial of narcotics trafficking charges against several defendants, including Ricky Blue, Lee Blue, and Timothy Givens, who were all charged with distributing narcotics in Rochester, New York. During the course of that trial, Petitioner testified that he supplied between two hundred and two hundred fifty kilograms of cocaine to various individuals.[5]

On or about January 3, 2003, Petitioner and the government presented the Court with a proposed plea agreement. According to Petitioner,[6] the agreement estimated an imprisonment sentencing range under the guidelines, which had a low end of 135 months.

---

[5]Transcript of April 28, 2003, Pretrial Proceeding (Docket No. [#147-2] at 4, 9).

[6]The Court has no independent recollection of the specifics of the proposed agreement. If Petitioner is correct, presumably the estimated sentence range of 135-168 months was based on a base offense level of 36 under USSG § 2D1.1(c)(2) (50-150 kilos of cocaine), reduced by three levels for acceptance of responsibility, and an incorrectly-estimated criminal history category of I.

Petitioner also maintains that the proposed agreement did not provide for an enhancement for him having a supervisory role in the drug trafficking activity pursuant to USSG § 3B1.1(a). The Court rejected the plea agreement, citing, among other factors, the government's representations, made at the detention hearing, concerning the magnitude of Petitioner's drug trafficking activity.[7] Notably, the government's representations at the detention hearing were based on evidence that it had amassed prior to any proffer agreement with the Petitioner, and independent of Petitioner's testimony at the Ricky Blue trial.

On June 19, 2003, Petitioner entered a guilty plea to Counts I, II, and III of the Superseding Indictment, pursuant to a revised Plea Agreement. In the Revised Plea Agreement, the parties agreed that Petitioner's base offense level was 36, that he should receive a four-level increase for his role as a leader or organizer under USSG § 3B1.1(a)[8], and that he should receive a three-level decrease for acceptance of responsibility. The parties further agreed that Petitioner's criminal history category was III, but that Petitioner could challenge that determination at sentencing. The parties further agreed that with an offense level of 37 and a criminal history category of III, Petitioner's sentencing range under the guidelines was 262-327 months. Petitioner further agreed to cooperate with the government, and in exchange, the government agreed to move for a downward departure under USSG § 5K1.1. Petitioner also waived his right to appeal or collaterally attack any

---

[7]Sentencing Transcript [#151-4] at 19.

[8]Contrary to Petitioner's suggestion, the evidence of such role did not come solely from Petitioner's testimony at the Ricky Blue trial under the protection of the proffer agreement. See, Sentencing Transcript [#151-4] at 20-21.("You were a major player involving, as Mr. Gregory represented early on [at the detention hearing], hundreds of kilos of cocaine[.]").

5

sentence that was within, or below, the range of 262-327 months.

The plea agreement was executed in open court. (Sentencing Transcript [#151-3]). Petitioner indicated that he understood the nature and substance of the plea, that he had sufficient time to confer with his attorney, and that he was satisfied with his attorney's advice and representation. *Id.* at 6-10. Petitioner stated that he had reviewed "all the terms and conditions" of the agreement with his attorney. *Id.* at 7. Specifically regarding the waiver of his right to appeal or collaterally attack his sentence, Petitioner stated that he had discussed the waiver provision with his attorney before coming to court, and that he understood the provision. *Id.* at 10-11. The Court subsequently observed, however, that the waiver provision had been omitted from the proposed agreement due to a clerical error, and the Court adjourned the plea until later in the day, to give the parties an opportunity to correct the clerical error. *Id.* at 11. It is clear, though, from Petitioner's testimony that despite such clerical error, he understood that the waiver provision was a term of the plea agreement before coming to court that day. Accordingly, Petitioner's suggestion, as part of the instant application, that he was surprised by the inclusion of the appeal/collateral attack waiver provision, is belied by his own testimony during the plea.

The Court also reviewed with Petitioner the fact that the plea agreement called for a four-level increase in his offense level, due to his role as an organizer or leader "of an either extensive criminal activity or one involving five or more individuals," and Petitioner stated that he understood. *Id.* at 13-14. Petitioner also indicated that he understood that his attorney could advocate for a criminal history category of II, instead of III, but that the calculation of his criminal history category would ultimately be done by the Court, and that, regardless of the Court's decision as to criminal history, or to any decision under the

6

sentencing guidelines, he could not withdraw his plea. *Id.* at 15. The Court determined, based on Petitioner's answers to questions, his demeanor, and his signing of the plea agreement, that the plea and plea agreement were "entered into knowingly, intelligently and voluntarily." *Id.* at 25.

Subsequently, Petitioner provided substantial assistance to the government, and the government moved for a six-level downward departure, pursuant to USSG § 5K1.1. At sentencing, the Court agreed to five-level downward departure. This, together with a base offense level of 36, four-point increase for role in the offense, and a three-point decrease for acceptance of responsibility, resulted in an offense level of 32. Petitioner's attorney challenged the criminal history category, arguing that it should be II instead of III. In that regard, the dispute centered on a 1995 conviction for attempted possession of a forged instrument, for which Petitioner received a sentence of sixty-three days in jail. Petitioner had been arrested and detained, and had posted bail sixth-three days later. Subsequently, Petitioner pled guilty to the charge and received a sentence of time served. Petitioner's attorney argued that the Court should not consider such sentence as a "sentence of imprisonment of at least sixty days" as described in USSG § 4A1.1, for two reasons. First, he argued that it was improper to consider the conviction, since it "came to the attention of Probation only through Mr. Guerrero's cooperation with the government."[9] Second, he argued that the sixty-three day sentence was somewhat arbitrary, since that number was based only on the number of days that Petitioner remained in jail prior to posting bail. Counsel suggested that if Petitioner had posted bail a few days earlier, he might have

---

[9]Sentencing Transcript [#151-4] at 5-6.

received a sentence of time-served that was less than sixty days. The Court rejected those arguments and found, by a preponderance of evidence, that a two-point increase was required under USSG § 4A1.1(b), resulting in a total criminal history category of III. Based on an offense level of 32 and a criminal history category III, the guideline sentencing range was 151-188 months. The Court imposed a sentence consisting principally of 180 months on Counts one and two of the indictment, to run concurrently.

Petitioner subsequently obtained new counsel and filed an appeal. On appeal, Petitioner argued that the appeal waiver was invalid, that the sentencing guidelines were unconstitutional, and that his criminal history category was miscalculated. The U.S. Court of Appeals for the Second Circuit dismissed the appeal, finding that Petitioner had knowingly and voluntarily waived his right to appeal. *U.S. v. Guerrero*, 04-5777-cr (2d Cir. Jul. 26, 2005).

Petitioner, proceeding *pro se*, subsequently filed the instant application. Petitioner first contends that the waiver of his right to appeal or collaterally attack his sentence is unenforceable, for several reasons. He states that the waiver provision was inserted into the Plea Agreement at the last minute, and that the Court coerced him into accepting it. Petitioner also states that the Court misled him regarding the nature of the waiver, by implying that it referred only to appeals and not collateral attacks. Alternatively, Petitioner maintains that even if the waiver provision is enforceable, he can collaterally attack his sentence on the basis of ineffective assistance of counsel. On that point, he alleges that his trial counsel was ineffective for agreeing to a four-level enhancement for Petitioner's role as a leader or organizer, for failing to obtain a criminal history category of II, for failing to convince the Court to accept the original proposed plea agreement, and for failing to

8

have the case transferred to another judge. Petitioner also contends that his appellate counsel was ineffective for failing to argue on appeal that this Court had never accepted Petitioner's guilty plea.

Respondent filed responsive papers, opposing all of Petitioner's arguments, and Petitioner filed reply papers. The Court has thoroughly considered the parties' submissions and the entire record. As discussed further below, Petitioner has failed to demonstrate that his decision to enter into the plea agreement was the result of ineffective assistance of counsel. To the contrary, Petitioner's decision to enter the plea agreement was knowing and voluntary. Accordingly, Petitioner's collateral attack is barred by the waiver provision in the plea agreement.

## DISCUSSION

The legal principles applicable to Petitioner's motion collaterally attacking his sentence are well-settled:

> A defendant's waiver of his right to collaterally attack his sentence under section 2255 is enforceable so long as the waiver is both 'knowing and voluntary.' To be knowing, the defendant must fully understand the potential consequences of his waiver.[10] The Second Circuit has consistently recognized the benefits to both defendants and the Government in upholding plea agreements. While the defendant gains limited exposure at sentencing, the Government expends fewer resources. The benefit of the bargain is lost when a defendant can nonetheless collaterally attack his sentence.
>
> An enforceable section 2255 waiver bars claims based on grounds that arose after, as well as before, a plea agreement is signed. However, a waiver of appellate or collateral attack rights does not foreclose an attack on

---

[10] *See, Pfeiffer v. U.S.*, Nos. 97-2343, 97-2468, 99-2755, 96-2603, 234 F.3d 1262, 2000 WL 1655232 at *2 (2d Cir. Nov. 3, 2000) ("We have held that waivers of the right to appeal or collaterally attack a sentence are enforceable as long as the waiver was made knowingly and voluntarily. A waiver is knowing and voluntary if the defendant actually does understand the significance and consequences of a particular decision and if the decision is uncoerced.") (citations and internal quotation marks omitted) (Unpublished).

9

the validity of the process by which the waiver has been procured.

*Antonucci v. U.S.*, Nos. 08 Civ. 529(SAS), 04 CR 828(SAS), 2009 WL 185996 at *3 (S.D.N.Y. Jan. 26, 2009) (footnotes and internal quotation marks omitted); *see also, Parisi v. U.S.*, 529 F.3d 134, 138 (2d Cir. 2008) ("To raise a claim despite a[n] . . . appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards."). (citations and internal quotation marks omitted).

To establish ineffective assistance of counsel, a defendant must meet two requirements:

> First, he must demonstrate that his attorney's performance 'fell below an objective standard of reasonableness' under the 'prevailing professional norms.' *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must show a 'reasonable probability' that absent counsel's error, the outcome of the proceeding would have been different. *Id.* at 687-88.

*Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (footnote omitted). When applying the first *Strickland* prong, courts must be

> mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts. To give appropriate deference to counsel's independent decisionmaking, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Another familiar risk is that, in the illuminating light of hindsight, we might look back and project ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him. To counteract this inclination to evaluate counsel's performance against insight gained only through the passage of time, *Strickland* requires that "[w]hen assessing whether or not counsel's performance 'fell below an objective standard of reasonableness ... under prevailing professional norms,' " we must "consider the circumstances counsel faced at the time of the relevant conduct and ... evaluate the conduct from counsel's point of view." [*Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (*quoting Strickland*, 466 U.S. at 688-89, 104 S.Ct. 2052) (first ellipsis in original).

*Parisi v. U.S.*, 529 F.3d at 141.

Before reaching Petitioner's claims concerning his counsel, the Court will address Petitioner's contentions that the Court misled him and coerced him into entering the plea agreement. First, Petitioner's assertion that the waiver provision was sprung on him at the last minute is false. In that regard, as discussed above, on June 19, 2003, prior to the execution of the plea agreement, counsel informed the Court that the appeal/collateral attack waiver had been omitted from the agreement due to a clerical error. (Sentencing Transcript [#151-3] at 10). The Court temporarily adjourned the appearance, until later that day, to allow the agreement to be corrected. Nevertheless, prior to such adjournment, Petitioner had admitted that the waiver was part of the agreement, that his attorney had discussed the waiver provision with him, and that he understood the provision. *Id.* at 10-11. Furthermore, there is no merit to Petitioner's claim that the Court misled him into believing that the waiver pertained only to appeals, and not collateral attacks. The waiver provision clearly states that Petitioner was giving up his right to appeal or collaterally attack his sentence (Plea Agreement [#151-2] at 22), and Petitioner stated that he understood the provision.

Moving on to Petitioner's ineffective assistance claims, he alleges that his attorney was ineffective for agreeing to a four-level increase in his offense level, based on Petitioner's role as a leader or organizer. Petitioner's argument in that regard has several components. First, he contends that there was no factual basis for the enhancement. Alternatively, he contends that the factual basis for the enhancement was provided by his own testimony, which should not have been used, since it was protected by the proffer agreement. Additionally, he alleges that the Court forced the parties to include such a

11

provision, as a condition of accepting the plea agreement, and that his attorney should have prevented the Court from doing so, or should have tried to have the case transferred to another judge. None of these arguments have merit.

At the outset, the Court did not force the parties to include such a provision. Nor would there have been any practical reason for the Court to do so, since the Court had the absolute right, under the Plea Agreement, to determine Petitioner's offense level, and Petitioner had no right to withdraw his plea. (Plea Agreement ¶ 14, Docket [#151-2] at 10). In any event, the Court was not biased against Petitioner, and there was no basis for his attorney to have the case transferred to another judge. Moreover, as discussed earlier, the government had evidence that Petitioner was an "organizer or leader" of extensive criminal activity, within the meaning of USSG § 3B1.1(a), before Petitioner entered into the proffer agreement. In that regard, the Presentence Investigation Report ("PSI") details how the U.S. Drug Enforcement Administration ("DEA") began investigating Petitioner in 1999, during its investigation of Ricky Blue's narcotics distribution organization, and how it determined that Petitioner had been Blue's primary supplier of cocaine for at least five years. The PSI further determined that Petitioner coordinated the transportation of such cocaine from Texas to Rochester, and that he wired approximately $350,000. in proceeds to the Dominican Republic. Such information showed that Petitioner "exercised management responsibility over the property, assets, or activities of a criminal organization." USSG § 3B1.1, Application Note 1. Accordingly, Petitioner's counsel was not ineffective for advising Petitioner to agree to the enhancement. Nor was Petitioner prejudiced by the inclusion of the provision, since, as already mentioned, the Court could have, and undoubtedly would have, applied the enhancement when calculating Petitioner's

offense level, as it was entitled to do under the terms of the plea agreement. In any event, Petitioner's challenge to the factual basis for the enhancement is barred by the Plea Agreement's appeal/collateral attack waiver provision, which Plaintiff entered into knowingly and voluntarily. (See, Plea Transcript [#151-3] at pp. 4-8, 10-14, 17-18, 24-25). During his plea, Petitioner specifically agreed to the four-level enhancement based on his role "an organizer or leader of an either extensive criminal activity or one involving five or more individuals." (Id. at 13-14, 23-25).

Petitioner next asserts that his attorney was ineffective with regard to challenging his criminal history category at sentencing. However, even if that were true, such ineffectiveness would not have affected whether Petitioner's decision to enter into the plea agreement was knowing and voluntary. It is clear from the record that Petitioner understood, when he entered the plea agreement, that, although his attorney was going to challenge the proposed criminal history category III, the decision ultimately was the Court's. The fact that the Court ruled against Petitioner on that point does not change the fact that Petitioner's waiver was knowing and voluntary. Beyond this, Petitioner's contention that his attorney was ineffective in the manner in which he challenged the criminal history category lacks merit. Lastly on this point, there is no merit to Petitioner's contention that the Court violated his proffer agreement by using his prior conviction to increase his criminal history category. Probation independently investigated the circumstances of Petitioner's conviction, and did not merely rely on Petitioner's testimony at trial. In any event, the Court would have been entitled to consider such information even if it was the product of the proffer agreement. See, USSG § 1B1.8(b)(2) (Permitting a court to consider information provided pursuant to a cooperation agreement, "concerning the

13

existence of prior convictions and sentences in determining § 4A1.1 (Criminal History Category) and § 4B1.1 (Career Offender)). *See, U.S. v. Farmer*, 543 F.3d 363, 376 (7th Cir. 2008) ("[T]he district court properly relied on information obtained from Compton's proffer to determine that the instant offense began in 1998; U.S.S.G. § 1B1.8(b)(2) provides that proffers are not off-limits when used for information 'concerning the existence of prior convictions and sentences in determining § 4A1.1 (Criminal History Category) and § 4B1.1 (Career Offender).'").

Finally, Petitioner contends that his appellate counsel was ineffective for failing to raise various arguments on appeal. However, even if that were true, the ineffective assistance of appellate counsel could have had no bearing on whether Petitioner's decision to waive his appeal/collateral attack rights was knowing and voluntary.

## CONCLUSION

For the foregoing reasons, Petitioner's application [#147] is denied. The Clerk of the Court is directed to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated: Rochester, New York
May 29, 2009

ENTER:

_Charles Siragusa_
CHARLES J. SIRAGUSA
United States District Judge

14